**JUDGE HERB ROSS (Recalled)**

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF ALASKA**
605 West 4th Avenue, Room 138, Anchorage, AK 99501-2253 — (Website: www.akb.uscourts.gov)
Clerk's Office: 907-271-2655 (1-800-859-8059 In-State) — Judge's Fax: 907-271-2692

| | |
|---|---|
| In re<br><br>IT, LLC,<br><br>Debtor. | Case No. 15-00107-HAR<br>In Chapter 7<br><br>**MEMORANDUM FOR DISMISSAL OF CASE** |

1- **SUMMARY OF RULING**- The court ruled that this case should be dismissed under: (a) 11 USC §1112(b) because the petition was signed and filed without the authority of IT, LLC; and (b) 11 USC §305(a)(1) because it is basically a two-party dispute between nondebtors, and the debtor and its creditors will be better served if they are not saddled with the restrictions, complexities and expense of a chapter 11 proceeding.

2- **ADDITIONAL FINDS OF FACT**- Less than 27 hours after this case was filed, the court heard a contested motion to dismiss (ECF No. 2), and orally granted the motion. In an effort to get notice of the court's ruling docketed and noticed out to other creditors, this written memorandum is being filed after the order of dismissal has been entered (ECF No. 18). This memorandum is to state the court's findings of fact and conclusions of law more articulately. I will make these written findings in the following bullet points:

- The parties did an admirable job in presenting the complex factual issues on short notice. And it is appropriate to rule expeditiously because the debtor is coming into its flush four-month summer season and needs clarity as to who is in control of operations. Both Bob Gross and Jack Barrett vehemently claim to be the appropriate manager. Appointment of a trustee under §1104 would be a drawn out project. I cannot rule that control should be turned over to Barrett on the present record, yet I find I have enough information to determine this case should be dismissed.

    Barrett suggests, as an alternative to him getting control, that a certain nonprofit organization in the community would be a good choice for a chapter 11 trustee. I find that this would not be a good choice because many of debtor's 182 units are for regular rental, as opposed to being dedicated to low-cost housing. It is unlikely the nonprofit would have the expertise and hands on experience of Bob Gross.

- The capital call and buyout of RB Enterprises, LLC's membership interests in the debtor is a contrived litigation tactic as opposed to a legitimate exercise by a member to protect the financial viability of the debtor LLC.

The dispute between Barrett and Gross stems from a falling out in about June 2014. Although it does involve the debtor to some degree, the principal focus is another LLC owned by them, Meritage Management, LLC and not the debtor.

Barrett and Mystery Ranch, LLC (a 50% member of the debtor) sued Gross and RB Enterprises, LLC (owner of the other 50%) in the Anchorage superior court on about August 1, 2014 in Case No. 3AN-14-8418CI. Judge Gregory Miller ordered on December 10, 2014 (and reaffirmed on January 14, 2015), that the lawsuit be stayed pending arbitration because IT, LLC was involved to a degree, and IT, LLC's operating agreement calls for arbitration of disputes. Barrett has not pursued arbitration in the over 100 days between that order and the petition date.[1]

Even if it was appropriate for Mystery Ranch, LLC to have made a capital call, its default acquisition of RB Enterprises' membership interest was inappropriately implemented. As a result, Mystery Ranch did not validly exercise the option to make a capital contribution on behalf of RB Enterprises and acquire its membership interest.

Barrett and Mystery Ranch's rationale as to why this was appropriate is spelled out in its motion for injunctive relief filed on April 23, 2015.[2] The premise for the $1,025,000 capital call is based on inaccurate and/or arbitrary calculations. Although they may ultimately prove to have some merit, Barrett's testimony reveals that the calculations are mostly, at this point, speculation debtor is in financial distress, fueled by litigation paranoia.

For example, per Gross's testimony, which is basically unrefuted, and the court's review of the evidence:

(a) there is no need for a $300,000 operating capital reserve when the debtor is coming into its flush four months;

(b) payroll taxes are current;

(c) trade debt, other than a few small disputed accounts and insider receivables, are current;

(d) the two AHFC notes are current;

(e) the insider claims of Mystery Ranch and Meritage Management totaling $425,000 are not legitimate reason for requiring a capital call;

(f) Mystery Ranch claims it made both its and RB Enterprises' respective $512,500 shares of the capital call partly in cash, with the remainder in property value (valuation of a property contribution, "initial Gross Asset Value" as defined in the operating agreement, requires the consent of a majority of the

---

[1] The complaint and Judge Miller's order on reconsideration are found at ECF No. 2, Exhibits B and E.

[2] ECF 10, at pages 4-7, and the related exhibits.

MEMORANDUM FOR DISMISSAL OF CASE                                                              Page 2 of 5

    members[3]). Most of Mystery Ranch's contribution was in property whose value had never been agreed upon by RB Enterprises. Even if the value of the cash contribution is somehow to be counted, it is less than enough to acquire a majority of the voting rights.[4]; and

    (g) Tellingly, Mystery Ranch never actually *made* any capital contributions. It moved assets around, but always retained exclusive control of them and gave none of them over to IT, LLC. Barrett testified that he would not have turned over the capital contribution as long as Gross was in control of the debtor's operations. And, Gross testified that he told Barrett that he too was ready to make RB Enterprises' $512,500 contribution, but likewise never gave up control to IT, LLC.

- Based on the testimony both Barrett and Gross, Meritage Management, LLC is not the former business entity that became IT, LLC. They are separate entities, although the petition lists Meritage as the "FKA" of IT, LLC.

    Apparently Barrett and Mystery Ranch argue that IT, LLC stole the assets out of Meritage Management. There is absolutely no documentation of this. IT, LLC appears to be a distinct entity with its own federal tax ID number.

    Although the evidence was sparse, when IT, LLC acquired the Inlet Towers in late 2011 or early 2012, it used Meritage Management to operate the Towers. From then until about June 2014, Meritage operated the business (comprised of hotel rooms, low income housing, and the leasing of space for a restaurant and bar). Per the testimony of Gross, debtor "leased" the Towers to Meritage on an oral basis, Meritage provided the services to operate the Towers, and paid back to the debtor any net profit or revenue after Meritage's expenses. When Gross had a falling out with Barrett in about June 2014, he took the operations back "in house." I find that this sequence of events is plausible and that the debtor is not the alter ego or successor of Meritage Management.

- The debtor is not in a cash business in which liquid assets are in danger of being wrongfully taken. It submits to yearly formal CPA audits to comply with AHFC's oversight. As a separate entity it is relative current on its debts, is coming into its most profitable season, and would be substantially harmed by the continuance of this chapter 11 case – harmed by the strictures on a debtor-in-possession and subject to uncalled for expense.

    I do not fault Barrett at all for not presenting more evidence given the time constraints on his attorney. But, he has been litigating with Gross for almost nine months and I find that its contention of financial doom based on mismanagement of the debtor or defalcation by Gross is more speculative than real at this point. Certainly it is not enough to wrest management from Gross and give it to Barrett based on his speculations.

---

[3] A copy of the Operating Agreement is found at ECF No. 2, Exhibit A.

[4] ECF 10, at pages 4-7, and the related exhibits.

MEMORANDUM FOR DISMISSAL OF CASE            Page 3 of 5

      Even if I am wrong about my surmise, there is no realistic way for the court to determine, without time consuming and costly hearings, whether or not Barrett is entitled to control. Such a process would distract from debtor's operations and possibly impair its survival. As a free standing entity, the debtor and its creditors should not be the collateral damage of the war between Barrett and Gross.

3- **LEGAL ANALYSIS**-

3.1- **Mystery Ranch. LLC or Jack Barrett Did Not Have Authority to File the Petition**- Generally, authority of an entity to file a bankruptcy is determined by state law. If the filing is not aurthorized, the appropriate remedy is to dismiss.[5]

Alaska law, AS 10.50.110(a) provides that the operating agreement of an Alaskan LLC generally governs. The debtor's operating agreement is ambiguous as to the percentage (either 66% or 100%) needed to authorize a bankruptcy, but it is something over 50%.[6] As my findings indicate, Mystery Ranch did not validly acquire RB Enterprises' interest as a result of its capital call. So, as one of my alternative rulings, this case should be dismissed pursuant to 11 USC §1112(b).

3.2- **Dismissal Under 11 USC §305(a)(1) is Appropriate**- Alternatively, §305(a)(1), **Abstention**, of the Bankruptcy Code provides:

      (a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—

            (1) the interests of creditors and the debtor would be better served by such dismissal or suspension; • • •

Abstention can be used in a case, such as this, where the interests of the creditors and debtor will be served if the case is dismissed, even if the court would otherwise have jurisdiction.[7]

The primary conflict is between Barrett and Gross, not the debtor. The debtor appears financially sound. It is sufficiently policed by its reporting requirements and audit obligation to AHFC. In the court's opinion, the case was filed to wrest control from Gross and not because of

---

[5] A-Z Electronics, LLC, 350 B.R. 886 (Bankr. Ct. Ida. 2006).

[6] Section 11.5 of the operating agreement. ECF 2, Exhibit A.

[7] Wechsler v. Macke Int'l Trade, Inc. (In re Macke Int'l Trade, Inc.), 370 B.R. 236, 247-48 (9th Cir. BAP 2007) (an involutary case).

MEMORANDUM FOR DISMISSAL OF CASE      Page 4 of 5

debtor's financial distress. While there may be merit to Barrett's contentions, the evidence shows that the debtor is relatively current on all its financial obligations to third party creditors. It would be severely distracted by the requirements and expense of a chapter 11 case and by having to attend to bankruptcy litigation during its busy summer months.

This is a two-party nondebtor dispute which is a poster child for dismissal under the abstention section.[8] It has been pending in state court for nine months already, and the bankruptcy court's taking jurisdiction would be a grave mistake.

DATED: April 24, 2015

/s/ Herb Ross
HERB ROSS
U.S. Bankruptcy Judge

Serve :
Terry Draeger, Esq., for Barrett parties
Cabot Christianson, Esq., for Gross parties
Thomas Buford, Asst. US Trustee

---

[8] *Collier on Bankruptcy*, ¶306.02[2][d] (16th ed. online as of 04/23/15),

MEMORANDUM FOR DISMISSAL OF CASE