**JUDGE HERB ROSS (Recalled)**

## UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF ALASKA
**605 West 4th Avenue, Room 138, Anchorage, AK 99501-2253 — (Website: www.akb.uscourts.gov)**
**Clerk's Office:  907-271-2655 (1-800-859-8059 In-State) — Judge's Fax:  907-271-2692**

In re

IT, LLC,

                    Debtor.

Case No. A15-00107-HAR
In Chapter 7

**MEMORANDUM SUPPORTING DENIAL**
**OF MOTION FOR RECONSIDERATION**
**[ECF NO. 30]**

### CONTENTS                                                              Page

**1. SUMMARY OF DECISION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**2. THERE IS NO MOTION FOR RECONSIDERATION** . . . . . . . . . . . . . . . . . . . . . . . . . 2

**3. THE EXPEDITED HEARING ON THE MOTION TO DISMISS WAS FAIR** . . . . . . . . . . 2

**4. THE PETITION WAS AN UNAUTHORIZED FILING** . . . . . . . . . . . . . . . . . . . . . . . 3

**5. THE COURT WILL ABSTAIN FROM EXERCISING JURISDICTION** . . . . . . . . . . . . . . 8

**6. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

---

    **1. SUMMARY OF DECISION**-  The principal reasons for granting the motion to dismiss and denying the motion for reconsideration are:  (a) Mystery Ranch was not authorized to file the chapter 11 petition under its sole signature because its capital call maneuver did not result in the authority to declare itself the manager; and, (b) this bankruptcy involves a two party dispute between Jack Barrett and Bob Gross which would be better resolved from the standpoint of the debtor and its creditors if the court declines jurisdiction.

2. **THERE IS NO MOTION FOR RECONSIDERATION**- The court often refers to a motion for reconsideration as a shorthand way to describe tolling motions under several procedural rules. These are motions for a new trial or to alter or amend a judgment under F.R. Civ. P. 59[1] and a motion for relief from a judgment or order under F.R.Civ. P. 60.[2]

I will treat the motion for reconsideration as a Rule 59 motion which is appropriately seeking a reconsideration of the correctness and merits of the trial court's underlying judgment.[3]

3. **THE EXPEDITED HEARING ON THE MOTION TO DISMISS WAS FAIR**- The docket shows this chapter 11 petition was filed at 1:31 p.m. ADT on April 22, 2015. The motion to dismiss was filed after the court closed, at 6:52 p.m. ADT.[4]  Mr. Christianson, for Gross, said it was an urgent matter because of the potential dampening effect of a bankruptcy on business at the beginning of Inlet Towers' tourist season. The court would, nonetheless, never have set a hearing on the motion to dismiss for the next day, Thursday, April 23, 2015, at 3:30 p.m. except that Cabot Christianson, Gross's attorney, said that Terry Draeger, the attorney for the petitioner said he could appear at that time.  Attorneys Draeger and Christianson both claim to represent the debtor.

Mr. Draeger filed an opposition with Exhibits A-K[5] at 2:09 p.m ADT on April 23, 2015, less than an hour-and-a-half before the dismissal hearing, and the court had a short time to review it.

Mr. Draeger emphatically said at the hearing that because he had not been able to garner all the evidence (witnesses and exhibits) he was at a disadvantage.  Because I did not expect we would finish on April 23rd, at the beginning of the hearing I asked if the parties could continue the hearing on

---

[1]  Incorporated by F.R.Bkcy.P. 9023.

[2]  Incorporated by F.R.Bkcy.P. 9024.

[3]  In re Wylie, 349 B.R. 204, 209 (9th Cir. BAP 2006).

[4]  ECF No. 2.

[5]  ECF No. 10, titled *Motion for Injunctive Relief & Holding RB Enterprises, LLC, Robert Gross, & Melodie Gross in Contempt of Court for Violating Automatic Stay & Opposition to Motion to Dismiss.*

Friday, May 1, 2015.  Both sides said they could continue the hearing, if needed, on the following day.

We began the hearing and only had two witnesses.  Both Gross and Barrett strongly opposed the other being declared the manager of the debtor LLC.  To my surprise, in the 2½ hour hearing,[6] some clarity emerged from the noise and I determined that I had sufficient evidence to grant the motion to dismiss on the two grounds stated.

I do not recall Mr. Draeger asking for a continuance of the hearing after I announced my tentative, then final, decision.  And, on the issue of the validity of the capital call which was one basis for my ruling that the petition was unauthorized he had the opportunity to clearly state Barrett's position with exhibits and testimony as spelled out in Section 4 of this memorandum.  The same is true, to a lesser degree, of the decision to dismiss on abstention grounds, discussed in Section 5 of the agreement.

**4.  <u>THE PETITION WAS AN UNAUTHORIZED FILING</u>**-  The motion for reconsideration argues the court got it wrong in saying Mystery Ranch, LLC, had not validly obtained the 50% membership share of Bob Gross's LLC, RB Enterprises, LLC, in a capital call procedure.  In its four page discussion titled *Capital Call and Transfer of Ownership*[7] it offers no detailed discussion of what the operating agreement calls for.

Nor has either party given the court an analysis of the legal issues involving capital calls and defaults, which would have been very helpful to me given the fast track pace of the proceeding.  I acknowledge that both sides were working under time pressure which allowed little time for legal research.  This is an issue, however, that Barrett contemplated since at least the beginning of March 2015 and he probably could have done a better job in the motion for reconsideration of advising the court on the law.

---

[6] See the *Amended Proceeding Memorandum* for the hearing at ECF No. 17.

[7] *Motion to Reconsider Order Dismissing Case*, ECF No. 30, pages 3-6.

MEMORANDUM SUPPORTING DENIAL OF
MOTION FOR RECONSIDERATION [ECF NO. 30]                                    Page 3 of 9

To begin with, the underpinnings for the $1,025,000 capital call by Mystery Ranch seems suspect.  I apologize for using the more pejorative "contrived" in my findings;[8] a better description of the suspicion is that the capital call procedure seemed to the court more like a "squeeze-out" maneuver.[9]

Barrett stated the need for capital was shown by the following table (the first two columns are Barrett's and the last two the court's)[10]:

| Item | Amount | Percent | Comment |
|------|--------|---------|---------|
| Payroll taxes owed IRS | 40,000 | 3.90% | Gross disputes |
| Operating Capital (Mar-May) | 300,000 | 29.27% | Need is disputed by Gross as of 04/23/15 |
| Overdue loan by Mystery + int. | 375,000 | 36.59% | Suspect loan made to Meritage Mgt., not debtor |
| Est. Payroll taxes (classified) | 25,000 | 2.44% | |
| Deficiency to AHFC | 50,000 | 4.88% | AHFC acknowledged it is current |
| Workers' comp (misclassified) | 15,000 | 1.46% | |
| DOL claims | 45,000 | 4.39% | |
| Liability to Meritage for assets | 50,000 | 4.88% | |
| Corp. tax - Sub S to C election | 25,000 | 2.44% | Gross says debtor is sub-S; probably a Meritage matter |
| Accounts payable | 100,000 | 9.76% | Comparable to Gross's trade payable |
| — Totals | 1,025,000 | 100.00% | |

More than 50% of the total appears to be related to Meritage Management, LLC, and not the debtor.  Meritage Management does not appear to be either predecessor or alter ego of IT, LLC.[11]

---

[8]  ECF No. 19, page 1, line 27.

[9]  An example of a "squeeze-out" is Shafer v RMS Realty, 741 N.E. 155 (Ct. App. Ohio 2000) (demonstrates using a position of cash strength, in that case by a majority partner, in conjunction with a cash call provision in a partnership agreement; found in that case to be a breach of fiduciary duty).

[10]  ECF No. 10, page 4.

[11]  Memorandum for Dismissal of Case, ECF No. 19, at page 3.

MEMORANDUM SUPPORTING DENIAL OF
MOTION FOR RECONSIDERATION [ECF NO. 30]                                      Page 4 of 9

Even if Mystery Ranch was allowed to make the capital call in its sole desecration and use that as a vehicle for acquiring RB Enterprises' membership interest, it did not achieve that end in the court's opinion.  Here is the court's analysis:

■  **The Capital Call**- The procedure for a capital call for additional capital contributions is found in §6.5 of the operating agreement.[12]  Per §6.5(a), a member that feels there are insufficient assets to service the business can make a call for additional cash capital which is due in fifteen business days.

   The capital call was made by Mystery Ranch on March 13, 2015 .[13]  So, the cash contributions had to be made by April 3, 2015, fifteen business days later.  On April 6, 2015, Mystery Ranch presumably gave notice it had made its $512,500 contribution "within the fifteen-business-day requirement."  Mystery Ranch alleges that it made its share, composed of $125,000 in US funds and $387,500 from debt transfers of money presumably owed to Mystery Ranch by the debtor.[14]

■  **Default Procedure**- If a member defaults in making the contribution, on a five business day notice, members who have honored the call can make the contribution of the defaulting member and acquire the defaulting member's proportionate interest, per § 6.5(b).  The language is exceedingly dense.

   Mystery Ranch presumably sent a *Member's Default Notice* to itself, Mystery Ranch, no sooner than April 15, 2015, the date of the notice.[15]  I am uncertain if notice was sent to RB Enterprises.  The notice that said the non-defaulting member, Mystery Ranch could acquire RB Enterprises' share within 5 business days.

   Mystery Ranch relies on an April 17, 2015 *Notice of Capital Contribution to IT, LLC* to prove it acquired RB Enterprises' membership by making another $512,500 contribution for its interest.[16]  The contribution was composed of: (a) $30,000 US Funds; (b) $99,962 for "Accrued, but unpaid interest from Barrett's promissory note"; and (c) $382,538 from the assignment of a promissory note and related payments (I do not believe the $482,500 in non-cash items was ever fully explained in the evidence or papers submitted by Mystery Ranch).

■  **Even If the Capital Call Was Valid, Mystery Ranch Is Not a 100% Owner**-  The initial capital contribution of each partner was $1,100 per §6.1.  Even if Mystery Ranch acquired RB Enterprises $512,500 share by default, RB Enterprises retains the $1,100

---

[12] At the dismissal hearing, Mr. Draeger agreed that the copy of the *Operating Agreement of IT, LLC* attached to the motion to dismiss was accurate.  The operating agreement is found at ECF No. 2, Exhibit A.

[13] ECF No. 10, this is an unnumbered exhibit before Exhibit G.

[14] ECF No. 10, Exhibit G.

[15] ECF No. 10, Exhibit I.

[16] ECF No. 10, Exhibit J.

MEMORANDUM SUPPORTING DENIAL OF
MOTION FOR RECONSIDERATION [ECF NO. 30]                                          Page 5 of 9

in capital at a minimum, giving it at least a .1% interest.  The record, unfortunately, does not disclose if there were additional capital contributions before the capital call.

This is relevant because it may take 100% ownership approval to file a bankruptcy. Sec. 11.5 is ambiguous as to whether it requires 66% or 100%.  Arguably, any dispute would have to be resolved by an agreement or arbitration about which percentage controls.  It also effects the type of notice of a members meeting, discussed below.

- **Property Contributions Should Not Count Toward Mystery Ranch's Capital Contribution** - Eighty-five percent of the $1,025,000 was in property, the value of which was not agreed upon by RB Enterprises.  Meritage Management claims a total of $155,000 in cash contribution[17] and $870,000 in property[18] between its own capital call contribution and to pay for the defaulted contribution.

  But, the property contribution should not be counted at all toward meeting the capital call.[19]  And, the Alaska statute specifically limits a default payment on behalf of a noncontributing member to contributions in cash.[20]  The operating agreement only allows for capital calls "in cash."[21]   The initial capital call by Mystery Ranch was for a "cash call."[22]

  In addition, even if the capital call could be met by a property contribution, the value of that contribution "requires the consent of a majority of the Members."[23]

  All of this calls into question the validity of Mystery Ranch's claim it fully contributed its $512,500 pro rata share of the initial capital call.[24]

- **Neither Party Actually "Made" a Contribution**- At some time before the petition was filed, both members claim they had the capital to turn over to IT, LLC.  Barrett said he would not have turned the money over IT, LLC as long as Gross was controlling it.

---

[17]  $125,000 in US funds for its own contribution and $30,000 on behalf of RB Enterprises' share.  ECF No.10, page 5.

[18]  $387,500 in property for its own contribution, and $99,962 plus $382,538 in property on behalf of RB Enterprises' share.  ECF No.10, page 5.

[19]  *Ribstein and Keating on Ltd. Liab. Cos.*, §5.4, <u>Form of contributions</u>.

[20]  AS 10.50.280.

[21]  ECF No. 2, Exhibit A, page 10.

[22]  ECF No. 10, Exhibit ___ (unnumbered exhibit between Exhibits F and G).

[23]  ECF No. 2, Exhibit A, page 5, under the definition of "Gross Asset Value" in exception (a).

[24]  ECF No. 10, Exhibit G.

MEMORANDUM SUPPORTING DENIAL OF
MOTION FOR RECONSIDERATION [ECF NO. 30]                                          Page 6 of 9

Mystery Ranch deposited the money (first $125,000 and then $30,000) in Credit Union 1, but never contributed it to IT, LLC.[25]  Barrett said he would not have paid it over to IT, LLC, until he controlled the management.  Although the testimony was sparse (or, maybe even in the form of argument, Gross implied he had his capital contribution available also, but had not turned it over to IT, LLC).

***The court has not located a case on point, but will adhere to its initial ruling, nonetheless, for the purpose of quickly ruling on the motion for reconsideration, since the motion is also being granted on the alternative grounds set forth in Section 5 of this memorandum in denying the motion for reconsideration***.  I will try to locate some legal authority for this conclusion (and also disclose if I find authority which refutes it).

- ■  **A Meeting Was Never Called by The Manager or 100% of the Members to Remove Gross as Manager**- Sec. 11.7 of the operating agreement requires that a meeting of the members be called by the manager or 100% of the members.  At a minimum, Gross retained a small membership interest, even if the capital call was otherwise valid.  To my knowledge, Gross was given no notice of a meeting.  Even if he was, it could not have complied with notice requirements of the operating agreement (requiring at least 10 days), pursuant to § 11.7(b) of the operating agreement.

A new or replacement manager must be by a vote of the members.[26]  This implies it generally must take place as a result of a proper membership meeting.  ***Without proper notice to Gross, the action to remove him as manager and install Barrett in his stead appears to be in violation of the operating agreement.***

Generally, authority of an entity to file a bankruptcy is determined by state law.  If the filing is not authorised, the appropriate remedy is to dismiss.[27]

Alaska law, AS 10.50.110(a) provides that the operating agreement of an Alaskan LLC generally governs.  The debtor's operating agreement is ambiguous as to the percentage (either 66% or 100%) needed to authorize a bankruptcy, but it is something over 50%.[28]  As my initial findings indicated, supported by my analysis in the present memorandum, Mystery Ranch did not validly acquire RB Enterprises' interest as a result of its capital call.  This case should be dismissed pursuant to 11 USC §1112(b) and the motion for reconsideration should be denied.

---

[25]  ECF No. 10, Exhibit K.

[26]  ECF No. 2, Exhibit A. §§ 10.1 and 15.3.

[27]  A-Z Electronics, LLC, 350 B.R. 886 (Bkrtcy. Ct. Ida. 2006).

[28]  Section 11.5 of the operating agreement.  ECF 2, Exhibit A.

**5. THE COURT WILL ABSTAIN FROM EXERCISING JURISDICTION**- In an appropriate situation, the bankruptcy court may elect to dismiss or suspend the case under 11 USC §305(a)(1) where the interests of the creditors and the debtor are better served by declining jurisdiction.[29]   The section provides:

(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—

(1) the interests of creditors and the debtor would be better served by such dismissal or suspension; • • •

Sec. 305(a)(1) is often used as a tool in the case of involuntary petitions, but it is applicable to voluntary cases, too.[30]   It is an extraordinary remedy.  The discretion of the bankruptcy court should be guided by the totality of the circumstances.  The court of appeals cannot review a bankruptcy judge's decision.[31]

The reasons for granting the motion to dismiss are spelled out in the court's *Memorandum for Dismissal of the Case*.[32]   These reasons are expanded upon as follows:

- ■ **Forum Shopping**- Forum shopping is one of the grounds used for abstaining.[33]
  The dispute between Barrett and Gross came to a head in about June 2014.  Although it does involve the debtor to a degree, the dispute more directly relates to the dispute over the management of Meritage Management, LLC as spelled out in the court's findings.[34]

  As a result of the dispute, Barrett and Mystery Ranch sued Gross and RB Enterprises, LLC in state court on about August 1, 2014.  On December 10, 2014, Superior Court Judge Gregory Miller ruled the dispute had to be arbitrated due to the arbitration clause in IT, LLC's operating agreement.  That ruling was confirmed by Judge Miller on January 14, 2015.

---

[29] Wechsler v. Macke Int'l Trade, Inc. (In re Macke Int'l Trade, Inc.), 370 B.R. 236, 247-48 (9th Cir. BAP 2007) (an involutary case).

[30] In re Colonial Ford, Inc., 24 B.R. 1014, 1018 (Bkrtcy. Ct. D. Utah 1982).

[31] Macke Int'l Trade, Inc., 370 B.R. 236, at 247.

[32] ECF No. 19.

[33] In re WLB-RSK Venture, 296 B.R. 509, 513-14 (Bkrtcy. Ct. C.D. Cal 2003) (dismissal was under 11 USC §1112(b)).

[34] Citations to the record are in the court's findings at ECF No. 19, and will not be repeated here.

The arbitration clause requires arbitration be conducted in ninety days of a demand pursuant to §19.4(c).  Had Barrett filed a demand within a week, by January 21, 2015, the award would presumably have been due April 21, 2015.  Notably, the bankruptcy was filed on April 22, 2015.

Instead, Barrett chose to rely on a cash call procedure to squeeze Gross out as manager. As described in Section 4 of this memorandum, the cash call notice went out in mid-March 2015 (presumably after some prior legal research).  It was completed with the alleged buy-out on April 20, 2015.   This is strong evidence of forum shopping.

This is a two party dispute that has been pending in state court for over nine months. The state law issues over management are better resolved in state court or arbitration. To overlay the dispute with a layer of cost, complexity and restrictions inherent in a chapter 11 case is unwarranted and unwise.[35]

- ■ **<u>Debtor Does Not Seem to be In Severe Financial Distress</u>**- While the court made a number of findings that it was not convinced the debtor, as a distinct LLC, was in the depth of distress that Barrett portrays, I realize the time to present evidence to rebut Gross was limited.  Overall, however, Barrett's contentions have many holes.

  The argument for Barrett justifying the capital call was set forth in the table (reproduced at page 4 of this memorandum).  It appears to be substantially overstated. AFHC, at $8 million, is far and away the largest creditor.  Contrary to Barrett's assertion of defaults on the AHFC obligation, AHFC (whose representatives attended the dismissal hearing) acknowledged that it was current.  And, debtor is subject to audits by independent CPAs so it is under tight supervision in that respect.

  The declarations of Barrett and Jeff Cunningham in support of the motion to reconsider seem to demonstrate Barrett's conflation of the debtor with Meritage Management.[36] Gross testified that the debtor is at the cusp of its four-month busy season, so while Cunningham's projection may have some merit, in the near term the debtor does not appear to be in dire financial jeopardy.

The motion for reconsideration will be denied as it related to the abstention issue.

**6. <u>CONCLUSION</u>**- A separate order will be entered denying the motion for reconsideration.

DATED: May 4, 2015

_____/s/ Herb Ross_____
HERB ROSS
U.S. Bankruptcy Judge

<u>Serve</u> :
Terry Draeger, Esq., for Barrett parties [claiming to represent the debtor]
David Bundy, Esq., for Jack Barrett
Cabot Christianson, Esq., for Gross parties  [claiming to represent the debtor]
Bruce Falconer, Esq., for IT, LLC
Thomas Buford, Asst. US Trustee

---

[35] *Collier on Bankruptcy*, ¶305.02[2][d] (16th ed. online as of 04/23/15).

[36] ECF Nos. 31 and 32.